**STATE of Missouri, Respondent,**

v.

**Thomas Jefferson LEE, Appellant.**

**No. KCD 26877.**

Missouri Court of Appeals,
Kansas City District.

March 31, 1975.

James L. McMullin, Hill, McMullin & Wilson, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Ellen S. Roper, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special JJ.

ANDREW JACKSON HIGGINS, Special Judge.

Thomas Jefferson Lee was convicted by a jury of murder, first degree. His punishment was assessed at life imprisonment, and sentence and judgment were rendered accordingly. §§ 559.010, 559.030, RSMo 1969, V.A.M.S.

Defendant was charged as "either alone or knowingly acting in concert with others" with the murder of Sol Landie.

Appellant does not question the sufficiency of evidence to sustain the charge, and the jury reasonably could find that: John Frankoviglia, also known as John Franks, devised a scheme to exterminate Sol Landie, a federal government witness; that defendant, acting as contact man for Frankoviglia, urged Edward Ronnie Williams with the promise of money that Williams and his companions, Marquise Williams, Gary Johnson, and Earl Howard kill Landie; that Ronnie Williams and his companions executed the commission on November 22, 1970, in Kansas City, Jackson County, Missouri; and that defendant paid money to Ronnie Williams for the deed. See State v. Lee, 486 S.W.2d 412 (Mo.1972), appeal from prior trial, reversed on other grounds. See also State v. Frankoviglia, 514 S.W.2d 536 (Mo.1974).

Appellant charges the court erred (I) in failing to grant a mistrial during the State's opening statement when the prosecuting attorney stated that John Frankoviglia gave two (three) marijuanas to Ronnie Williams at a time when Frankoviglia and Williams allegedly discussed the murder, "this being evidence of other crimes not chargeable to the appellant"; and (II) in failing to grant a mistrial during the State's opening statement when the prosecuting attorney was allowed, over defendant's objection, to state that Frankoviglia threatened to bomb the Williams' home if Ronnie did not commit the murder, "this being evidence of other alleged crimes not chargeable to the accused and for which he was not on trial."

Incident (I) arose as follows:

"Johnnie Frankoviglia says, 'I have got to have the man by Monday.' Johnnie Frankoviglia then gives to Ronnie Williams the address of Sol Landie's home, 7914 Washington. He says to them, 'The man's having a party tonight. The back door is usually left open; after the party, you can get him.' He gives Ronnie Williams three marijuana cigarettes. * * *

"MR. McMULLIN [for the defense]: Your Honor, I * * * move for a mistrial. He is charged with murder, not with possession of marijuana and bringing in evidence of prior crimes is * * * reversible error and I think the Supreme Court so held in the Lee case which just came back.

"THE COURT: Mr. Humphrey hasn't said a word about this defendant having any marijuana. He is talking about one of the witnesses.

"MR. McMULLIN: I understand. He is saying it is charged in a conspiracy, Judge, that Franks gave him marijuana and that Franks conspired with Lee and that is evidence of other crimes because the act of Franks if he did give it would be the act of the defendant.

"THE COURT: Objection is overruled."

Incident (II) arose as follows:

"They received a final phone call from Johnnie Frankoviglia. Johnnie Frankoviglia says to Ronnie Williams, 'I have been listening to the radio. I haven't heard any good news. When are you going to hit the man?'

"The evidence will be that Johnnie Frankoviglia then threatened Ronnie Williams to either hit the man or 'I'm going to put a bomb under your house.' The evidence will be then that—* * *

"MR. McMULLIN: * * * I must object at this time to evidence of other bombings which can be pointed directly to the defendant such as charged in a conspiracy and I must respectfully move for a mistrial.

"THE COURT: Well, he hasn't said there were any bombings in the first place and in the second place, I think you are misconstruing the opinion of the Supreme Court in the Thomas Jefferson Lee case of which this is a re-trial * * *. He is merely talking about the background of

this very incident. It all is tied up with this very incident. He is not talking about any prior thing. Everything he talked about has to do with this witness as a part of the general picture and the prosecutor is entitled to show that and your objection is overruled."

■ The foregoing indicates that defendant made his motions for mistrial in both instances; however, there are no allegations of error in his motion for new trial which go to either of these charges. Accordingly, allegations of error (I) and (II) have not been preserved for review, State v. Bowens, 476 S.W.2d 495, 499[5] (Mo. 1972); Rule 27.20(a), V.A.M.R.; and they are not urged as plain errors under Rule 27.20(c), V.A.M.R.

Appellant charges the court erred (III) in allowing testimony of a telephone conversation allegedly between Ronnie Williams and John Frankoviglia not made in the presence of the defendant "which was hearsay at a time when no conspiracy was shown between the alleged coconspirators."

According to appellant's transcript reference, this charge arose from an incident between Frankoviglia and Ronnie Williams at Frankoviglia's place of business; and, over defendant's objection, proceeded as follows:

"Q (By Mr. Humphrey [for the State]): What did that mean, he had to 'get' him by Monday? What did that mean on the street? A Well, street-wise, that meant go get him. Q Go get him means what? A Kill him."

Irrespective of defendant's objection to admission of the foregoing, there is no allegation of error in his motion for new trial which goes to this charge. Accordingly, allegation of error (III) has not been preserved for review, State v. Martin, 411 S.W.2d 241, 243[5] (Mo.1967); Rule 27.20(a), supra; and it is not urged as plain error under Rule 27.20(c), supra. It is also readily noted that the answer in question, rather than a hearsay statement,

is simply an understanding in the "street" of the term "get him." .

Appellant charges the court erred (IV) "in overruling [his] motion for mistrial and when the State's witness Ronnie Williams was allowed to testify not in the presence of the defendant when a conspiracy had been proven that he met Johnny Frankoviglia who gave him some marijuana cigarettes and ordered him to commit the crime."

According to appellant's transcript reference, this charge goes to the following: "Q Who was he talking about 'they having a party'? A Johnnie, I mean, Johnnie Frankoviglia was referring to Sol Landie. Q. All aright. And what did he do then? A Well, they got the phone book and gave me the man's address and telephone number and told me they was having a party and the back door would be open and what side of the bed the man would be sleeping on * * * Q This was Johnnie Frankoviglia telling you this? A Yes. Q All right. Go ahead. A Gave me three sticks of marijuana wrapped up in some toilet paper, told me he would be at a hotel with a lady friend and he told me he would be listening. Q Listening to what? A To see if it would come on the news."

■ Appellant's contention (IV) notwithstanding, the foregoing shows there was no objection, motion to strike, or request for mistrial going to the testimony of Ronnie Williams concerning marijuana and orders to kill Sol Landie given to Ronnie by Frankoviglia. Accordingly, the court did not err for failure to grant unrequested relief, State v. Stevens, 467 S.W.2d 10, 18 (Mo.1971); and defendant's failure to object to the testimony in question and to present the charge in the motion for new trial precludes review, State v. Kern, 447 S.W.2d 571, 576[8] (Mo.1969); State v. Martin, supra. Again, there is no suggestion that this assignment constitutes plain error under Rule 27.20(c), supra.

Appellant charges the court erred (V) in failing to grant a mistrial when "Ronnie Williams testified on direct examination that after the murder Johnny Franks told him in the absence of the appellant that he was to go to Tommie's [appellant's] house and keep his mouth shut, that they had two more murders for him next week, this being evidence of other alleged crimes for which the accused was not on trial and not charged."

According to appellant's transcript reference, this charge arises from the following:

"Q All right. Did you talk to Johnnie Frankoviglia on the 23rd? A Yes. Q By telephone? A Face to face. Q Tell me what you said when you saw Johnnie Frankoviglia. A I said, 'Frankoviglia, where is the money?' Q And where were you when you asked him that? A At the oil company. Q What did he say? A 'Go to Tommy's house and keep your mouth shut. We have got two more next week.' Q And then, after you left the oil company, where did you go? A We went to Tommy's house. Q And what did you do there? * * *

"MR. McMULLIN: Your Honor, if I recall correctly, this witness just stated that after he hit this man that Johnnie Franks had two more killings for him next week. Would you look back there as to what Ronnie said about he had two more for him next week?

"(Whereupon, the following answer was read back by the reporter outside the hearing of the jury: 'Answer: "Go to Tommy's house and keep you mouth shut. We have got two more next week." ')

"MR. McMULLIN: Your Honor * * *. He just said he went to Johnnie Franks' house after he said he killed this man and Johnnie Franks told him he had two more killings for him next week that is evidence of other crimes for which the defendant isn't on trial and I * * * move for a mistrial. MR. HUMPHREY: * * * it is all part of the same transac-

tion involving the same conspiracy * * * it is not evidence of other crimes, 'I have two more next week', and it is ambiguous, and left without explanation, I don't think it is harmful at all and, in any event, it is part of this transaction. THE COURT: I agree that in any event it is not evidence of the commission of another crime and the objection is overruled and the motion for mistrial is overruled."

Appellant asserts that this incident constituted evidence of other crimes and was, therefore, inflammatory and prejudicial. His argument is premised on an erroneous interpretation of the evidence, i. e., that it meant Ronnie was to "keep his mouth shut and they [Frankoviglia and Lee] had two more killings for him next week."

Appellant's contention and argument are fraught with several difficulties.

■ First, it is doubtful that the testimony in question referred to other crimes. It did not mention any specific crime; and, if it did refer to any crime, the reference was to something in the future. In its ambiguity, the testimony may well have referred to payments or sums of money, inasmuch as it followed the question "where is the money?"

■ Second, the testimony went to an event which occurred pursuant to and following the successful conspiracy to murder and was admissible as a statement of defendant's coconspirator, John Frankoviglia. State v. Holloway, 355 Mo. 217, 195 S.W. 2d 662, 665 [9, 10] (1946).

■ Third, the testimony related to matters on the date following the murder in question, and was relevant and admissible as part of the transaction and conspiracy. State v. King, 375 S.W.2d 34, 39[11] (Mo.1964).

Accordingly, the trial court did not err in failing to grant a mistrial in this instance.

Judgment affirmed.

All concur.